UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ISAAC HARRIS,

      Plaintiff,

v.

DETROIT PUBLIC SCHOOLS
COMMUNITY DISTRICT, DETROIT
BOARD OF EDUCATION, IRIS
TAYLOR, ANGELIQUE PETERSON-
MAYBERRY, MISHA STALLWORTH,
DEBORAH HUNTER-HARVILL,
GEORGIA LEMMONS, CORLETTA J.
VAUGHN, SONYA MAYS, NIKOLAI
VITTI, LARRY GRAY II, BELINDA
HICKS, EVEGE JAMES, KENNETH
WILLIAMS, YULOUNDA RICKS,
MICHELLE GOODWIN, CHARLENE
MALLORY, EDWINA DORTCH, AISHA
SCOTT, BEN JACKSON, LORI CORBIN,
LAWRENCE RUDOLPH, LUIS SOLANO,
and DOES,

      Defendants.

_____/

Case No. 4:20-cv-10922
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

## **REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT[1]**

### I.  Introduction

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

This is an employment case.  Plaintiff John Harris, proceeding *pro se*, is suing defendants the Detroit Public Schools Community District (hereinafter DPSCD) and various individuals who were employed by DPSCD or were members of the DPSCD Board of Education.  In broad terms, Harris alleges that he was harassed, retaliated against, and ultimately terminated from his employment.  He asserts several claims under state and federal law.  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 13).

Before the Court is Harris' motion for summary judgment (ECF No. 40), Harris' amended motion for summary judgment[2] (ECF No. 47), and defendants' motion for summary judgment (ECF No. 49).  For the reasons that follow, the undersigned RECOMMENDS that Harris' motions for summary judgment be DENIED, defendants' motion for summary judgment be GRANTED, and the case be DISMISSED.

## II.  Background

The material facts as gleaned from the record follow:[3]

---

[2] The undersigned considers Harris' amended motion for summary judgment as a supplemental brief to his original motion for summary judgment.

[3] The record consists of emails and letters attached to the complaint, Harris' deposition, and DPSCD Board of Education minutes which are attached to defendants' motion for summary judgment.

Harris is an African American man and was born on March 17, 1957. (Harris' deposition, ECF No. 49-1, PageID.1047, 1073).  He was employed by Detroit Public Schools through 2012, at which point he "was laid-off . . . because of a flawed evaluation."  (*Id*., PageID.1049).  In 2017, Harris was hired by DPSCD to teach at East English Village Preparatory Academy.  (*Id*.).  Although Harris was hired to be a resource teacher, he volunteered to teach social studies for special education students for the 2017-2018 school year.  (*Id*., PageID.1050).  Harris was again required to teach social studies the following two school years.  (*Id*.).  Harris' date of last employment was December 17, 2019.  (*Id*., PageID.1049).  On that date, DPSCD terminated him for alleged job abandonment.  (*Id*.).

Harris contends that DPSCD "forc[ed] [him] to work 20 days at the beginning of the 2019 and 2020 school year in a hostile and unsafe work environment."  (*Id*., PageID.1058).  The classroom in which Harris taught was "gang infested."  (*Id*.).  Furthermore, a parent threatened Harris' life and the school's principal, defendant Larry Gray II, refused to take action.  (*Id*.).

According to Harris, on September 11, 2019, he had to "surrender" his seventh hour classroom to his students.  (*Id*., PageID.1062).  At the center of the hostile environment created by the students was a student named Dorian Simpson, Jr.  (*Id*., PageID.1061-1062).  Harris had sent Simpson to see defendant Kenneth Williams, the dean of students, the previous day for being insubordinate and using

3

profanity toward Harris. (*Id.*, PageID.1062-1063). Because of the conflict

between Harris and Simpson, Simpson directed the other students to be disruptive

and not allow Harris to teach and to threaten to beat Harris up. (*Id.*, PageID.1064-

1065). Harris wrote this situation up in an email to Gray. (*Id.*; ECF No. 1-1,

PageID.81-83). Harris had previously emailed several other administrators

regarding Simpson on October 9, 2019. (ECF No. 1-1, PageID.90-91).

On September 16, 2019, Harris was pulled into a meeting with Gray,

Simpson, and Simpson's father. (ECF No. 49-1, PageID.1066-1067). The meeting

was about Harris allegedly questioning Simpson about an electronic device. (*Id.*,

PageID.1067). Harris interrupted the meeting to complain about the manner in

which Simpson was referring to him, which Harris believed was disrespectful.

(*Id.*). At the end of the meeting, Simpson's father told Harris, "If you say anything

to my son, I'm going to come up here and kick your ass." (*Id.*). Gray did not do

anything regarding this threat. (*Id.*).

On September 20, 2019, Harris emailed several administrators to expand on

the situation occurring in his seventh hour class. (ECF No. 1-1, PageID.101). On

September 25, 2019, Gray emailed Harris to inform him that Gray was concerned

about Harris' classroom management. (*Id.*, PageID.76). In particular, Gray did

not believe that Harris was following the proper method of addressing behavioral

issues. (*Id.*). On October 3, 2019, defendant Belinda Hicks, an assistant principal,

emailed Harris regarding a scheduled meeting that Harris failed to attend.  (*Id*., PageID.75).  She also emailed him to inform him that she saw him standing outside of his classroom during his seventh hour class.  (*Id*., PageID.93).  On October 4, 2019, defendant Evege James III, an assistant principal, emailed Harris regarding Harris' failure to provide lesson plans for his classes, submit documentation concerning the issues in his seventh hour class, and provide a parent call log.  (*Id*., PageID.74).

At some point after the September 16, 2019 meeting, Harris began refusing to enter his seventh hour classroom in order to protect himself.  (ECF No. 49-1, PageID.1067-1068; ECF No. 1-1, PageID.77-80).  He would stand outside of the classroom door for the class period.  (ECF No. 49-1, PageID.1068).  As a result of this behavior, Harris was sent to the employee transition center from approximately October 10, 2019 until October 21, 2019.  (*Id*., PageID.1060).  Defendant Aisha Scott, deputy executive director of recruitment and staffing, emailed Harris on October 9, 2019, informing him that he needed to report to the employee transition center the following day.  (ECF No. 1-1, PageID.68).

Also on October 9, 2019, Harris exchanged emails with James regarding the lack of books for Harris' classroom and Harris' failure to submit lesson plans for his classes.  (*Id*., PageID.73-74).  Harris also complained to James about the gang members and gang activities in his seventh hour class.  (*Id*.).

5

On October 21, 2019, Harris had a meeting with defendants Ben Jackson, senior executive director of human resources, and Lori Corbin, a human resource manager.  (*Id.*, PageID.1060).  Harris explained to Jackson and Corbin that he had to surrender his classroom to the students because of student behavior and gang activity.  (*Id.*, PageID.1061).  Jackson ordered Harris to return to his classroom. (*Id.*, PageID.1069).

Harris returned to his classroom on October 22, 2019, and worked a full day. (*Id.*, PageID.1069-1070).  Simpson was absent that day.  (*Id.*, PageID.1070).  On October 23, 2019, Simpson was present during Harris' third hour class.  (*Id.*). Simpson "made it clear that if [Harris] showed up to the seventh hour that it was going to be a violent situation."  (*Id.*).  Simpson's body language and tone of voice was the worst that Harris had experienced.  (*Id.*).  Accordingly, Harris attempted to contact an administrator, but was unable to do so.  (*Id.*).  Harris then signed himself out of the building and never returned.  (*Id.*).

On October 28, 2019, James emailed Harris regarding his no call, no shows for October 25, 2019, and October 28, 2019.  (ECF 49-4, PageID.1245).  James informed Harris that he would receive a verbal warning for failing to notify anyone in advance of his absences.  (*Id.*).

On November 11, 2019, Corbin sent Harris a letter[4] via regular mail and email informing him that he had "been absent from work without authorization for a period exceeding **five** consecutive workdays." (*Id.*, PageID.1247-1248). On November 18, 2019, defendant Luis Solano, the deputy superintendent, sent Harris a letter[5] informing him that he was "being charged with failure to return to [his] position as **Resource Room Teacher at East English Village**." (*Id.*, PageID.1249). The letter further informed Harris that his termination would be considered at a DPSCD Board of Education meeting on December 17, 2019. (*Id.*).

On December 17, 2019, the DPSCD Board of Education approved Harris' termination at a meeting. (ECF No. 49-3, PageID.1243; ECF 49-5, PageID.1258). Effective December 18, 2019, Harris was terminated for job abandonment. (ECF No. 49-3, PageID.1243).

### III. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing

---

[4] Harris says that he did not receive this letter, and that, if he had received it, he would have responded to it by submitting a form to resign/retire. (ECF No. 40, PageID.921-922).
[5] Harris also says that he did not receive this letter because it was sent to an old address of his. (ECF No. 40, PageID.921).

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Harris is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' "  *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

8

(quoting *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004)).

### IV.  Analysis

### A. Race, Sex, and Age Discrimination

At his deposition, Harris clarified a number of his legal claims.  Harris' claim of race discrimination stems from the meeting he had with Jackson on October 21, 2019.  Harris is African American and Jackson is Caucasian.  (ECF No. 49-1, PageID.1073).  Harris contends that Jackson's decision to send him back to his classroom at East English Preparatory Academy "was based on race."  (*Id*.). Additionally, Harris was one of only two black men employed as an exceptional student education teacher out of a total of 16 such teachers.  (ECF No. 51, PageID.51).

Harris' claim of sex discrimination stems from female supervisors harassing him about doing his job, even though he was already doing his job.  (ECF No. 49-1, PageID.1073-1074).  The claim is against defendants Charlene Mallory,[6] Edwina Dortch (program supervisor/ESE compliance supervisor), and Jackson. (*Id*., PageID.1076).

---

[6] It appears from Harris' complaint that Mallory was the former school principal. (ECF No. 1, PageID.6).

Harris' claim of age discrimination stems from the fact that he was hired under the teacher retirements system, rather than as a regular teacher, because of his age. (ECF No. 49-1, PageID.1075-1076). As a result, Harris was paid less than he should have been. (*Id.*). The claim is against DPSCD and Jackson. (*Id.*, PageID.1076).

Harris' discrimination claims arise under Title VII, the Elliot-Larsen Civil Rights Act (ELCRA), and 42 U.S.C. § 1981.[7] Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Notably, "[c]ases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007) (citing *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)); *see Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 666 N.W.2d 186, 193 (2003).

---

[7] Harris' § 1981 against DPSCD must fail. In *Arendale v. City of Memphis*, 519 F.3d 587, 598-599 (6th Cir. 2008), the Sixth Circuit held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." (quotations and citation omitted). "[N]o independent cause of action against municipalities is created by § 1981(c)." *Id.* at 599. Furthermore, "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984).

As a preliminary matter, to the extent that Harris asserts his discrimination claims against individual defendants, his claims fail.  In *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997), the Sixth Circuit held "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."  Thus, only Harris' discrimination claims against DPSCD may proceed.

Assuming that Harris alleges claims of race, sex, and age discrimination against DPSCD, he does so through circumstantial evidence.  When a plaintiff relies on circumstantial evidence, courts must employ a three-part burden shifting framework when evaluating his claim of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the first part, Harris "must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citations omitted).

If Harris is able to present a prima facie case under part one, the burden shifts to DPSCD to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  If DPSCD

meets this burden, then the burden shifts back to Harris who must show that

DPSCD's proffered reason is a pretext for discrimination.  *Id*. at 804.

DPSCD first contends that with the exception of his termination, Harris'

other claimed actions are not adverse actions within the meaning of Title VII.  The

undersigned agrees.  For instance, Harris asserts that he was not provided a key to

the bathroom or his classroom, he was not provided with a schedule or books, and

he was written up numerous times.

> An adverse employment action is defined in this circuit as " 'a
> materially adverse change in the terms of [one's] employment.' " *White
> v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)
> (en banc) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885
> (6th Cir. 1996)).  Such a materially adverse action includes "a
> significant change in employment status, such as hiring, firing, failing
> to promote, reassignment with significantly different responsibilities,
> or a decision causing a significant change in benefits." *Id*. at 798
> (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct.
> 2257, 141 L.Ed.2d 633 (1998) (internal quotation marks removed)).
> The employment action must be "more disruptive than a mere
> inconvenience or an alteration of job responsibilities." *Bowman v.
> Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000) (internal
> quotation marks omitted); *see also id*. at 462 ("[D]e minimis
> employment actions are not materially adverse and, thus, not
> actionable.").

*Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 565 (6th Cir. 2012).

None of DPSCD's alleged actions amounted to termination, demotion,

suspension, loss of any job responsibilities, or loss of pay.  Furthermore, "[a]

written reprimand, without evidence that it led to a materially adverse consequence

such as lowered pay, demotion, suspension, or the like, is not a materially adverse

employment action." *Id*. (collecting cases). Overall, apart from his ultimate termination, none of Harris' complaints amount to an adverse employment action.

For the purposes of its motion for summary judgment, DPSCD concedes that Harris can establish a prima facie case for race, sex, and age discrimination based on his termination being considered an adverse action. Despite making out a prima facie case, DPSCD argues that summary judgment is appropriate because DPSCD has articulated a legitimate, nondiscriminatory reason for terminating Harris' employment. Namely, DPSCD points to the fact that Harris walked off the job on October 23, 2019, and never returned. This is a legitimate non-discriminatory reason for termination.

The burden then shifts to Harris to show that the proffered reason was a pretext for discrimination. "A plaintiff can make this showing in one of three ways: (1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct, or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 245 (6th Cir. 2005).

Here, the record fails to show any evidence that suggests this proffered reason for his termination was a pretext for discrimination. Harris himself testified that he signed out of the building on October 23, 2019, and never returned.

13

DPSCD followed up with a letter in November of 2019 stating that Harris would be terminated if he did not contact DPSCD. There is simply no evidence to show that DPSCD's action in terminating Harris was based on his race, sex, or age. As such, summary judgment is appropriate.

## B. Retaliation

Harris says that Dortch and DPSCD retaliated against him for previously filing a lawsuit in which he named Dortch as a defendant.[8] (ECF No. 49-1, PageID.1077). Harris believed that Dortch was responsible for the writeups he received from Mallory. (*Id*., PageID.1078). Harris also says that defendants retaliated against him because he complained to Gray about the situation with his seventh hour class. Ultimately, Harris' claim is against every defendant because

---

[8] Although Harris says that Dortch was a defendant in his previous case against Detroit Public Schools, her name does not appear in the caption. That case was dismissed. *Harris v. Detroit Pub. Sch.*, No. 12-12331, 2012 WL 4212241 (E.D. Mich. Sept. 20, 2012). Similarly, Harris has filed a number of other lawsuits in this district against educational entities and has prevailed in none. *See Harris v. Morris*, No. 16-11162, 2017 WL 908298 (E.D. Mich. Mar. 8, 2017) (dismissing case against defendants associated with Eastern Michigan University on claims that they violated Harris' civil rights when he was a student at the university); *Harris v. Detroit Pub. Sch.*, No. 13-11609 (E.D. Mich. June 27, 2013) (dismissing employment discrimination case for failure to state a claim for relief); *Harris v. Members of Bd. of Governors of Wayne State Univ.*, No. 10-11384, 2011 WL 3799769 (E.D. Mich. Aug. 26, 2011) (granting defendants' summary judgment on Harris' claim that defendants discriminated against him when they denied him admission into a graduate program). Harris also has another case pending in this district in which he alleges various claims against several defendants associated with Eastern Michigan University for violations of his civil rights. *Harris v. Smith*, No. 21-11557.

they were all involved in a "chained conspiracy" against Harris.  (*Id*., PageID.1080).

Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) (citing 42 U.S.C. § 2000e–3(a)).  It "protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices."  *Id*. at 730.  As with a Title VII discrimination claim, a Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation."  *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008).

To support a claim of retaliation without direct evidence, Harris must first establish a prima facie case for retaliation.  To do so, he must show that (1) he engaged in protected activity; (2) DPSCD was aware of his protected activity; (3) DPSCD subsequently took a materially adverse action against Harris; and (4) a causal connection existed between the protected activity and the materially adverse action.  *Laster*, 746 F.3d at 730.  His claim "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action

or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

If Harris succeeds in making out the elements of a prima facie case of retaliation, the burden of production shifts to DPSCD to articulate a legitimate, non-retaliatory reason for the termination. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019) (citations omitted). If DPSCD satisfies its burden of production, the burden shifts back to Harris to show that the reason was a pretext for retaliation. *Id*. at 614. "The analysis of a retaliation claim brought under the ELCRA is identical to the Title VII analysis." *Id*. (internal quotation omitted). Similarly, "[t]he elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019).

Defendants argue that Harris cannot establish a prima facie case of retaliation because there is no evidence that the relevant decision makers (the DPSCD Board of Education members) were aware of his complaints to Gray. Even assuming Harris' complaints about Gray constitute protected conduct, Harris has not offered any evidence that that the relevant decision makers knew that Harris had complained to Gray or any other defendants regarding the situation in his seventh hour class. As a result, Harris cannot establish that he was the victim of retaliation.

16

Furthermore, Harris' claim that he was retaliated against for his former lawsuit is not supported by any evidence.  Harris does not point to any comments made by any defendant regarding his earlier lawsuit.  He also fails to connect any actions taken by defendants in this case to his earlier lawsuit.

Overall, defendants are entitled to summary judgment on Harris' claim of retaliation.

### C.  Hostile Work Environment under Title VII and ELCRA

Harris' hostile work environment claim is brought against Gray, Hicks, James, and Williams.  (ECF No. 49-1, PageID.1076-1077).  Harris says that Hicks failed to provide him with books for his classroom, which caused him to be unable to create lesson plans.  (*Id.*).  Harris also says that James was responsible for the wing of the school building in which Harris worked and Harris also asked him for books which he did not provide.  (*Id.*, PageID.1077).  Finally, Harris says that Williams, as dean of students, was responsible for Simpson's behavior.  (*Id.*).

Under Title VII and ELCRA, Harris must establish a prima facie case of hostile work environment by demonstrating

> that (1) [he] is a member of a protected class . . ., (2) [he] was subjected to harassment, either through words or actions, based on sex [race, or age], (3) the harassment had the effect of unreasonably interfering with [his] work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

17

*Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (quoting *Downey v. Charlevoix Cty. Bd. of Rd. Comm'rs*, 227 Mich. App. 621, 576 N.W.2d 712, 716 (1998)).  Sixth Circuit precedent presents "a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory."  *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (noting that in many cases, overtly discriminatory statements and racial slurs did not create a hostile work environment under this standard).

Even assuming that Harris lacked books for his classroom and that administrators' failure to properly intervene regarding Simpson's behavior was somehow related to his race, sex, or age, these conditions were not "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment."  *Phillips*, 854 F.3d at 327 (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011)).  At his deposition, Harris talked about Simpson's disruptive behavior and how Simpson directed other students to be disruptive.  (ECF No. 49-1, PageID.1064-1065).  Simpson also swore at Harris. (*Id*., PageID.1062).  However, this behavior was limited to one class hour each day and did not rise to the level of an abusive working environment.  At no point was Simpson or any other student physically abusive toward Harris, and the swearing and disruptive behavior directed toward Harris was not based on his race, sex, or

18

age.  Further, while some students allegedly physically threatened Harris, these threats were not so severe as to create a hostile work environment.  *See Campbell v. Hawaii, Dep't of Educ.*, No. CIV. 13-00083 DKW, 2015 WL 1608436 (D. Haw. Apr. 10, 2015), *aff'd,* 892 F.3d 1005 (9th Cir. 2018) (holding that student harassment, which included at least one threat of violence, did not rise to an actionable level); *see also Riley v. ITT Fed. Servs. Corp.*, No. CIV.A.3:99CV02362AWT, 2001 WL 194067 (D. Conn. Feb. 22, 2001) (holding that a teacher failed to state a hostile work environment claim where he alleged that he was physically threatened by a student, but failed to show that the threat was based on his protected class (race) because white teachers were also threatened by students).

A reasonable juror could not find that any of the aforementioned conduct constituted a hostile work environment.  Therefore, defendants are entitled to summary judgment on this claim

### D. Intentional Infliction of Emotional Distress

Harris' claim of intentional infliction of emotional distress is against Gray, Hicks, James, Williams, Scott, Jackson, Corbin, Lawrence Rudolph (assistant superintendent), and Solano.  (ECF No. 1, PageID.57).  Harris alleges that these defendants subjected him to "harassment, taunting, retaliatory employment actions, subjecting him to an inappropriate teaching classroom setting and expecting him to

19

subject himself to continuous threats by gang members in his 7th hour class, [that] were intentional and/or reckless and made with conscious disregard for Plaintiff's Mr. Harris rights, caused sever [sic] distress, and were outrageous." (*Id.*, PageID.57-58).

"Under Michigan law, the elements of intentional infliction of emotional distress ("IIED") are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4) that the emotional distress was severe." *Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 669 (E.D. Mich. 2015). "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of emotional distress." *Bhama v. Bhama*, 169 Mich. App. 73, 425 N.W.2d 733, 736 (1988). This requires plaintiff to show more than "hurt feelings," but "seeking and receiving medical treatment" is not "a condition precedent to satisfying the element of extreme emotional distress." *McCahill v. Commercial Union Ins. Co.*, 179 Mich. App. 761, 446 N.W.2d 579, 584 (1989).

Here, Harris has failed to establish at least element four, namely that he suffered severe emotional distress. Harris only states that he suffered "sever [sic] distress" in his complaint. He does not explain the nature of this severe distress,

and while it is not required, Harris also does not state he received medical treatment as a result of the severe distress.

Furthermore, Harris does not address his claim for IIED in either his motion for summary judgment or his amended motion for summary judgment. He only mentions the claim briefly in his response to defendants' motion for summary judgment, in which he states "[t]he overt and covert decision by Defendant Ben Jackson engaged in intentional infliction of emotional distress toward the plaintiff with the knowledge that he was being subjected to a hostile and unsafe work environment and that his health was being place into serious jeopardy at East English Village Preparatory Academy." (ECF No. 50, PageID.1271). No reasonable juror could find that sending Harris back to his classroom amounts to extreme and outrageous conduct. This action cannot be " 'regarded as atrocious and utterly intolerable in a civilized community,' such that lead the average member of the community to exclaim, 'Outrageous!' " *Williams v. AK Steel Corp.*, No. 18-11485, 2020 WL 2836287, at *13 (E.D. Mich. May 31, 2020). Thus, defendants are entitled to summary judgment on Harris' claim of IIED.

### E. Conspiracy to Interfere with Civil Rights

In order to establish a cause of action under § 1985(3), Harris must show that defendants were involved in misconduct that was motivated by " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.' " *Bartell v.*

21

*Lohiser*, 215 F.3d 550, 559-560 (6th Cir. 2000) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).  The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610*, 463 U.S. at 828-829.

Harris' conspiracy claim appears to be premised on the allegation that members of a sorority, Alpha Kappa Alpha (AKA), who were also DPSCD employees, conspired against Harris.  (ECF No. 1, PageID.60-61).  Harris claims that five out of the seven individual female defendants are members of AKA and that they conspired against him.  *See* ECF No. 49, PageID.1039 (citing ECF No. 49-1, PageID.1086).  Even taking Harris' unproven allegation as true, his claim under § 1985(3) must fail.  This is because he "does not allege [he] was treated unfairly because [he] was a member of a particular group." *Dohner v. Neff*, 240 F. Supp. 2d 692, 705 (N.D. Ohio 2002).  Accordingly, "[b]ecause [his] complaint does not allege that class-based animus motivated the defendants, it fails to state a claim under § 1985(3)." *Id*.  As such, defendants are entitled to summary judgment on Harris' claim of conspiracy to interfere with civil rights.

22

F.  Defamation

In his complaint, Harris states that he was defamed, and that this defamation was "A FORM OF DISCRIMINATION."  (ECF No. 1, PageID.44).  However, he does not further explain this claim.  Furthermore, at his deposition he stated that his claim of defamation is against anyone who was in attendance at a December 17, 2019 school board meeting.  (ECF No. 49-1, PageID.1080).  Harris explains in his response to defendants' motion for summary judgment that the defamation occurred when his name appeared in the minutes of the December 17, 2019 DPSCD board meeting.  (ECF No. 50, PageID.1270).

"Under Michigan law, the elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication."  *Gilliam*, 147 F. Supp. 3d at 668.

Here, Harris does not allege any defamatory statement occurred.  Rather, he takes issue with the fact that he was spoken of at all at a DPSCD board meeting.  Without a defamatory statement, Harris cannot meet the first element of a defamation claim, and his claim as a whole fails.  Thus, defendants are entitled to summary judgment on Harris' defamation claim.

23

## G. First Amendment Retaliation

Harris claims that he was retaliated against for exercising his First Amendment right to freedom of speech.  "First Amendment retaliation claims are analyzed under a burden-shifting framework."  *Dye v. Office of the Racing Com'n*, 702 F.3d 286, 294 (6th Cir. 2012).  "A plaintiff must first make a prima facie case of retaliation, which comprises the following elements: '(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.' "  *Id.* (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006)).  "If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate 'by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.' "  *Dye*, 702 F.3d at 294 (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)).  "Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant."  *Eckerman*, 636 F.3d at 208.

24

Here, Harris is unable to make a prima facie case of retaliation. This is because he is unable to satisfy the third element, namely that there was a causal connection between his protected speech and his termination. Even assuming that Harris' speech regarding his seventh hour class was protected and that his termination was an adverse action, Harris nonetheless has failed to connect the dots between these two elements. He does not offer any evidence that suggests he was fired for complaining about the behavior of his students. All of the submitted evidence suggests that Harris was fired for one reason – job abandonment. As such, defendants are entitled to summary judgment on Harris' First Amendment claim.

### H. Violation of Fifth and Fourteenth Amendment Rights

Harris' Fifth Amendment claim appears to be a due process claim for deprivation of property without the due process of law. (ECF No. 1, PageID.3). Harris' Fourteenth Amendment claim appears to be both a due process claim based on the above and an equal protection clause claim based on his class membership as an African American and as a man. (*Id*., PageID.66).

Section 1983 authorizes "any citizen of the United States or other person within the jurisdiction thereof" to pursue "an action at law [or] a suit in equity" against "[e]very person who, under color of" state law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42

U.S.C. § 1983.  Although "§ 1983 by itself does not protect anyone against anything[,]" *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979), the statute "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States. . . ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).

Here, Harris relies on the Fourteenth Amendment, which forbids state actors to "deprive any person of life, liberty, or property, without due process of law [.]" *See* U.S. Const. amend. XIV, § 1.  However, in *Ryan v. Aurora City Bd. of Ed.*, 540 F.2d 222, 227 (6th Cir. 1976), the Sixth Circuit held "that a non-tenured teacher has no 'expectancy' of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system.' "  Thus, *Ryan* makes it clear that Harris, a non-tenured teacher, could not have had a legitimate expectation of continued employment as a teacher because Michigan has a comprehensive Teacher Tenure Act, *see* M.C.L. § 38.91 *et seq*., that sets forth the requirements for tenure.  Accordingly, Harris' due process claim fails as a matter of law to the extent that it rests upon his contention that he had a continued interest in employment.

Harris' equal protection claim under the Fourteenth Amendment must also fail.  The Sixth Circuit has noted several times, "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must

be made to recover on an equal protection claim under section § 1983." *Smith v.*

*City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004) (collecting cases).  As

explained in detail above, Harris is unable to succeed on a discrimination claim

under Title VII as he has failed to put forth any evidence that his termination was

for a discriminatory reason.  Thus, defendants are entitled to summary judgment on

Harris' claims under the Fifth and Fourteenth Amendments.

Overall, Harris has failed to put forth evidence to create a genuine issue of

material fact as to any of the claims asserted in his complaint.  Rather, the record

shows that Harris has failed to make out any claims sufficient to survive summary

judgment.

### V.  Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Harris'

motions for summary judgment be DENIED, defendants' motion for summary

judgment be GRANTED, and the case be DISMISSED.

Dated: September 10, 2021      s/Kimberly G. Altman
Detroit, Michigan      KIMBERLY G. ALTMAN
     United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 10, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager
